IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KENNETH K. KAMAHELE,          )          CV. NO. 08-00283 DAE-LEK
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
JANET NAPOLITANO, Secretary of )
The Department of Homeland     )
Security, in her official capacity, )
                              )
          Defendant.          )
_____ )


ORDER VACATING THE DECISION OF THE MERIT
SYSTEM PROTECTION BOARD AND REMANDING
THE MATTER FOR FURTHER CONSIDERATION

On November 9, 2009, the Court heard Plaintiff's appeal from the

decision of the Merit System Protection Board ("MSPB").  William C.

McCorriston, Esq., and Dayna H. Kamimura-Ching, Esq., appeared at the hearing

on behalf of Plaintiff Kenneth K. Kamahele ("Kamahele"); Assistant U.S. Attorney

Rachel S. Moriyama appeared at the hearing on behalf of Defendant Department of

Homeland Security Secretary Janet Napolitano[1] (the "Agency").  After reviewing

the appeal, the supporting and opposing briefs, and the administrative record, the

_____

[1]Janet Napolitano is substituted for her predecessor, Michael Chertoff, as
Secretary of The Department of Homeland Security.

Court VACATES the decision of the MSPB and REMANDS the matter to the

MSPB for further consideration.

BACKGROUND

I.    Factual History

Kamahele worked as an officer in the Honolulu Police Department

("HPD") from approximately 1968-1992.  He then worked for security contractors

that provided security and passenger screening at the Honolulu International

Airport ("HNL").  In 2002, the Transportation Security Agency ("TSA") was

created to provide security and screening measures at airports.[2]  In August 2002,

TSA hired Kamahele as the Assistant Federal Security Director - Screening

("AFSD-Screening") for HNL.  This position made Kamahele the third most-

senior TSA official at HNL, and he reported to Deputy Federal Security Director

Stanford Miyamoto ("Deputy Director Miyamoto") and Federal Security Director

Sidney Hayakawa ("Director Hayakawa").  As the AFSD-Screening, Kamahele

was responsible for supervising screening managers, supervisors, and screeners.

He was also responsible for hiring the security screening workforce and for

overseeing the screening operations.

---

[2]TSA is an agency of the Department of Homeland Security.

In July 2005, Director Hayakawa notified the TSA Office of Internal Affairs and Professional Responsibility ("OIAPR") of a number of allegations of misconduct against TSA management at HNL.  OIAPR informed Director Hayakawa that his referral did not warrant OIAPR involvement and suggested that the allegations, including claims of a hostile work environment and time and attendance issues, be investigated by a TSA management team.  Thereafter, Deputy Director Miyamoto issued an email to the TSA staff at HNL, advising them that an outside team would be investigating management.  The email provided employees with an opportunity to submit information concerning workplace conditions, including issues such as favoritism, harassment, personnel actions, and retaliation. The email did not identify any managers by name or position.

In August 2005, TSA formed a team comprised of TSA managers from other duty stations and tasked them with performing a "Management Assist." After several days, the Management Assist team determined that a more formal "Management Inquiry" was necessary.  As a result, a Management Inquiry was conducted for several months during the late summer and early Fall of 2005.  The Management Inquiry team conducted over 200 interviews and eventually produced a report that included findings with respect to allegations of misconduct.

On April 6, 2008, the TSA Professional Review Board issued to Kamahele a written Notice of Proposed Removal based on three charges of misconduct, each with multiple specifications.  These charges were: (1) inappropriate conduct toward TSA employees; (2) poor judgment; and (3) lack of candor during the Management Inquiry.

Charge 1, for inappropriate conduct, chiefly involved allegations that Kamahele possessed a supply of job application forms for fast food chain Jack-in-the-Box which he would offer to TSA employees who raised personnel or employment issues.  The implicit suggestion from this act was apparently to signal to an employee that if they didn't like it at TSA, they could work at Jack-in-the-Box.  Specifications 2 and 3 under Charge 1 alleged that Kamahele had, at various times, pointed his finger at TSA employees in a manner simulating a gun and had made comments relating to loading and shooting a gun.  Specifications 4 and 5 involved circumstances in which Kamahele was alleged to have used his physical presence or comments to intimidate TSA employees, including using such derogatory terms as "punk," "bully," and "scum."

Charge 2, for poor judgment, involved two specifications. Specification 1 alleged that Kamahele had intimidated a TSA employee by referencing an organized crime practice wherein victims would be fed to local pigs

4

while the employee ate a pork sandwich.  Specification 2 involved allegations that

Kamahele filled 6 open positions with non-TSA employees who had been

previously employed by the HPD or local security companies where Kamahele had

worked.

Finally, Charge 3 alleged that Kamahele displayed a lack of candor

during the Management Inquiry.  Specification 1 in Charge 3 involved allegations

that Kamahele had claimed to routinely review "Screener Inquiry" forms but did

not recall a significant number of complaints about scheduling or promotions

lodged in these forms.  Specifications 2 and 3 involved Kamahele's lack of candor

regarding the Jack-in-the-Box applications and gun simulations allegations

described earlier.

On May 10, 2006, Kamahele submitted a written response to the

proposed removal to TSA Western Area Director Dennis Clark ("TSA Director

Clark").  In his response, Kamahele disputed the allegations but he admitted that he

had possessed Jack-in-the-Box job applications and that he had jokingly referred to

these applications in managers meetings.

On July 26, 2006, TSA Director Clark issued a decision removing

Kamahele.  In his decision, TSA Director Clark did not sustain all of the charges

and specifications alleged in the Notice of Proposed Removal[3]; he did, however,

determine that the two sustained charges (i.e., inappropriate conduct toward TSA

employees and lack of candor), warranted removal from his position.

II.   Procedural History

On August 29, 2006, Kamahele appealed his removal by filing a

complaint of discrimination and retaliation as part of a mixed case appeal before

the MSPB.  The claims were heard by Administrative Judge Craig A. Berg ("AJ

Berg") February 15 and 16, and March 1 and 2, 2007.  On July 31, 2007, AJ Berg

issued his Initial Decision.  The Initial Decision sustained the following: (1)

Specification 1 in Charge 1, for referencing Jack-in-the-Box applications; (2)

Specification 5 in Charge 1, using improper and unsuitable language; (3)

Specification 2 in Charge 3, for lack of candor regarding the Jack-in-the-Box

applications.  Specifically, AJ Berg found that the Agency failed to prove that

Kamahele ever offered a Jack-in-the-Box application to any employee; rather, AJ

Berg found that Kamahele joked about the applications in management meetings.

---

[3]TSA Director Clark sustained all five Specifications of Charge 1 and
Specifications 2 and 3 of Charge 3 (relating to Jack-in-the-Box applications and
gun simulations).  TSA Director Clark refused to sustain Charge 2 for poor
judgment or Specification 1 of Charge 3 (relating to Screener Inquiry forms).

AJ Berg denied all other Specifications, finding, among other things, that the Agency had failed to prove Kamahele ever used his finger to simulate a gun.

The Initial Decision also rejected Kamahele's affirmative defenses. Specifically, AJ Berg found that Kamahele had not shown by a preponderance of the evidence that race, national origin, or color were a motivating factor in the removal decision.  AJ Berg also held that, although the Agency committed several procedural errors in conducting its Management Inquiry, those errors were not "harmful" because Kamahele had an opportunity to examine witnesses and testify on his own behalf.  Kamahele had, therefore, failed to demonstrate that it was more likely than not that the errors could have changed the result.

After the Initial Decision was announced, the Agency filed a petition for review ("PFR") and Kamahele filed a cross-PFR with the MSPB.  In a Final Decision, dated May 15, 2008, the MSPB affirmed all of AJ Berg's findings of fact, but reversed the Initial Decision to mitigate Kamahele's penalty from removal to a 90-day suspension.  As a result, Kamahele's removal was reinstated.

On June 13, 2008, Kamahele filed the instant action seeking review of the MSPB's Final Decision.  The parties agreed to bifurcate the case and to first brief and resolve the issue of Kamahele's non-discrimination claims.  Kamahele's

claims regarding Title VII discrimination and retaliation will be resolved at another time.

On August 28, 2009, Kamahele filed his opening brief.  (Doc. # 46.) The Agency submitted its answering brief on September 28, 2009.  (Doc. # 49.) Kamahele then filed his reply on October 15, 2009.  (Doc. # 50.)

STANDARD OF REVIEW

Congress created the MSPB when it passed the Civil Service Review Act, 5 U.S.C. §§ 1101-10106.  As an agency, the MSPB has quasi-judicial authority to adjudicate federal employee appeals of agency personnel actions, including termination actions.  5 U.S.C. §§ 1204, 7512.  Federal employees aggrieved or adversely affected by a decision of the MSPB enjoy the right to obtain judicial review in federal court.  5 U.S.C. § 7703(a).

"Although appeals of Merit Systems Protection Board decisions generally must be filed in the Federal Circuit Court of Appeals, district courts have jurisdiction to review 'mixed' cases, in which an action involves both a Merit Systems Protection Act appeal and a discrimination claim." Coons v. Sec'y of the U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) (citing 5 U.S.C. § 7703(b)(2)).

8

In reviewing a MSPB decision,[4] a court "shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be -- (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ." 5 U.S.C. § 7703(c); see Lawrence v. Dep't of Interior, 525 F.3d 916, 920 (9th Cir. 2008).

The scope of a district court's review of the penalty imposed by the MSPB is very narrow. See Filiberti v. Merit Sys. Protection Bd., 804 F.2d 1504, 1510 (9th Cir. 1986). The court must defer to the MSPB's judgment in selecting an appropriate penalty "unless the penalty is so disproportionate to the offense as to constitute an abuse of discretion." Morales v. Merit Sys. Protection Bd., 932 F.2d 800, 802 (9th Cir. 1991). The Ninth Circuit has "found the penalty of dismissal to be excessively harsh only when the offense committed was extremely minor." McClaskey v. U. S. Dep't of Energy, 720 F.2d 583, 586 (9th Cir. 1983).

---

[4]Plaintiffs with Title VII discrimination claims in mixed cases are entitled to trial de novo on those claims. See 5 U.S.C. § 7703(c); Lawrence, 525 F.3d at 920. The instant review of the administrative record is a "more deferential statutory standard" than the one used in assessing discrimination claims. Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1994).

9

DISCUSSION

Because the parties agreed to bifurcate the discrimination claims from the nondiscrimination claims[5], the Court only reviews two issues at this time: (1) whether the MSPB erred in denying Kamahele's cross PFR; and (2) whether the MSPB erred in reinstating Kamahele's removal.

I.    Kamahele's Cross PFR

Kamahele argues that the MSPB erred in denying his cross PFR under 5 C.F.R. § 1201.115(d).  The MSPB "may grant a petition for review when it is established that: . . . (2) The decision of the judge is based on an erroneous interpretation of statute or regulation."  5 C.F.R. § 1201.115(d).  Here, Kamahele contends that the MSPB abused its discretion in denying his cross PFR because he

---

[5]The Court notes that it does not necessarily approve of the decision to bifurcate the issues on review.  In mixed cases, all claims should generally be ruled on at the same time in the same proceeding whenever possible.  See, e.g., Niimi-Montalbo v. White, 243 F. Supp. 2d 1109 (D. Haw. 2003) (MSPB appeal together with a motion to dismiss, or in the alternative, summary judgment); Ramirez v. Nicholson, Civ. No. 06-0546, 2007 WL 4208293 (S.D. Cal. Nov. 27, 2007) (MSPB appeal and a motion for summary judgment); Highlen v. Johanns, Civ. No. 06-0957, 2007 WL 2207777 (S.D. Cal. July 27, 2007) (MSPB appeal and counter motions for summary judgment).  The reason behind this is because "'questions of the employee's inefficiency or misconduct, and discrimination by the employer, will be two sides of the same question and must be decided together.'"  Williams v. Dep't of Army, 715 F.2d 1485, 1490 (Fed. Cir. 1983) (en banc) (quoting S. Rep. No. 95-969, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S. Code Cong. & Ad. News 2723, 2775).  Nevertheless, in order to resolve what issues it can and to avoid delay, the Court will proceed.

sufficiently established that AJ Berg erred in finding procedural errors in the
Management Inquiry were not harmless.

AJ Berg found that TSA committed several procedural errors during
its Management Inquiry that were not insignificant.  These included, most
seriously, failure of the investigators to preserve notes taken during witness
interviews and to properly memorialize or ratify witness statements.  Investigators,
in contravention of internal policies, did not have witnesses read, correct, and sign
their final statements.

Although AJ Berg recounted these errors, he concluded they were
harmless.  In order for procedural error to be harmful, a plaintiff must show that it
was "likely to have caused the agency to reach a conclusion different from the one
it would have reached in the absence or cure of the error."  5 C.F.R.
§ 1201.56(c)(3); see also Devine v. Brisco, 733 F.2d 867, 872-73 (Fed. Cir. 1984)
("[A] mere conjectural possibility of prejudice cannot suffice as a basis for
inferring actual prejudice.").  AJ Berg concluded that because Kamahele had an
opportunity to examine the witnesses in question and to testify on his own behalf,
Kamahele had not shown it was more likely than not that the errors changed the
outcome.

The Court disagrees.  Because Kamahele did not have access to the witnesses' original statements, there was no way for him to impeach their credibility or even know if they had materially changed their version of the facts. As noted above, this is in contravention of internal policies.

The MSPB then denied Kamahele's cross PFR, finding that he had failed to show AJ Berg erroneously interpreted the harmless error provision.  This Court now finds that the MSPB did abuse its discretion in coming to this conclusion.  Kamahele has shown, as is his burden, that the MSPB abused its discretion in finding that he had failed to establish that AJ Berg's decision was based on an erroneous interpretation of a statute or regulation.  AJ Berg conceded that an opportunity to rebut procedurally-corrupt charges after removal may not cure the error made earlier.

Kamahele also argues in his opening brief that the MSPB erred in denying his cross PFR because he established that AJ Berg erred in sustaining the remainder of the charges.[6]  (Opening Brief at 16-19.)  The MSPB clearly agreed

_____

[6]The Agency appears to believe it needs to defend the MSPB's affirmance of the two sustained charges.  (See Answering Brief at 19-24.)  However, Kamahele does not raise before this Court the MSPB's conclusion to affirm those two charges; rather, the arguments relating to the charges are only found in reference to the MSPB's decision to deny review of his cross PFR.  As such, this Court's analysis rests solely on whether the MSPB abused its discretion in denying the

(continued...)

with AJ Berg's findings of fact, as they affirmed all of his factual determinations and sustained the two remaining charges.

Finally, Kamahele argues in his opening brief that the MSPB erred in denying his cross PFR because AJ Berg erroneously rejected his retaliation and discrimination claims. (Opening Brief at 19-24.) Because the parties chose to bifurcate the discrimination and nondiscrimination claims on review, this Court will not make any determinations as to whether the MSPB erred in denying review of those claims. Such analysis would inevitably overlap with later conclusions as to the merits of Kamahele's discrimination claims. The Court does note, however, that Kamehele shouldered the burden of proof for the affirmative defenses of discrimination and retaliation both on initial review by AJ Berg and in seeking review of his cross PFR before the MSPB.

II.   The Removal Decision

The major issue on review is the MSPB's decision to reverse AJ Berg and reinstate Kamahele's removal. AJ Berg, in his Initial Decision, held that TSA Director Clark had failed to consider certain factors in deciding to remove Kamahele and therefore TSA Director Clark's decision was not entitled to the

---

[6](...continued)
cross PFR based on Kamahele's contentions that AJ Berg erred in sustaining any charges.

13

usual deference.  The MSPB, on the other hand, determined that AJ Berg should have given appropriate deference to TSA Director Clark's penalty determination. Under such deference, the MSPB concluded that the circumstances did not warrant mitigation of the removal penalty.

In the instant action, Kamahele argues that the MSPB's decision was arbitrary, capricious, and an abuse of discretion.  (Opening Br. at 25.)  Kamahele contends that AJ Berg properly concluded deference was not warranted under the circumstances and that the penalty of removal was beyond the parameters of reasonableness.  The Agency disagrees, relying on the deferential standard of review this Court must apply to argue that the MSPB's actions were proper.

As noted above, the scope of this Court's authority to overturn a penalty decision is very narrow.  The court must defer to the MSPB's judgment in selecting an appropriate penalty "unless the penalty is so disproportionate to the offense as to constitute an abuse of discretion." Morales, 932 F.2d at 802.  The Ninth Circuit has "found the penalty of dismissal to be excessively harsh only when the offense committed was extremely minor." McClaskey, 720 F.2d at 586.[7]

---

[7]The Ninth Circuit in McClaskey emphasized that a court is not free "to substitute its own view of personnel management techniques for that of the agency." Id. at n.2.  In a situation similar to the one presented here, the McClaskey court explained that the officer making an initial decision on appeal exceeded her

(continued...)

14

When the MSPB sustains some but not all of the charges or specifications alleged against an employee, the Board must review the agency-imposed penalty to determine whether it is within tolerable limits of reasonableness.  See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 306 (1981).  It appears undisputed that the administrative decision in Douglas provides the nonexhaustive list of twelve factors that may be considered in determining the appropriate penalty for a particular offense.  See id. at 332; see also McClaskey, 720 F.2d at 587.  These include: (1) the nature and seriousness of the offense; (2) the employee's job level and type of employment; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service and dependability; (5) the effect of the offense on the employee's ability to perform at a satisfactory level and the supervisor's confidence in the employee's ability to perform his assigned duties; (6) consistency of the penalty with those imposed on other employees for similar offenses; (7) consistency of the penalty with applicable agency table of penalties; (8) the notoriety of the offense or its

---

[7](...continued)
authority by failing to give sufficient deference to the agency's decision to remove the employee.  Id.  In that case, the Ninth Circuit determined that it was clear the officer reversed the removal decision because she considered the penalty unwise and believed that the agency could have accomplished its objectives with a more lenient penalty.  Id.  "Such judgments, however, are not within the discretion of the presiding officer, the Board, or this court."  Id.

impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions or personality problems; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.  See Douglas, 5 M.S.P.R. at 305.

It is well-settled that "[t]he board is not required to consider all twelve factors in every case; it need only consider those relevant to the individual case." McClaskey, 720 F.2d at 588.  The MSPB's role in reviewing the selection of an appropriate remedy is "essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness."  Douglas, 5 M.S.P.R. at 306.

A review of the record indicates that TSA Director Clark considered the following aggravating and mitigating factors in deciding to remove Kamahele: (1) the nature and seriousness of the offense; (2) the nature of his employment with TSA; (3) his length of service; (4) his ability to be rehabilitated and deal with and manage employees; (5) the ability or his willingness to be placed at a different position; (6) his refusal to take responsibility for his actions; (7) his lack of past

16

disciplinary action; (8) his dependability; and (9) the long hours and hectic work environment surrounding the rollout of new security measures.

AJ Berg did not find that consideration of any of those factors was in error; rather, he determined that TSA Director Clark had failed to consider two other factors: (1) whether Kamahele had acted for financial gain; and (2) whether Director Hayakawa still had confidence in Kamahele.  On review, the MSPB disagreed with AJ Berg that financial gain was a relevant factor, concluding that there is "no obvious financial gain to be had" by Kamahele.  The MSPB also concluded that because TSA Director Clark had considered Kamahele's length of service and his lack of any prior discipline, he had implicitly considered Kamahele's dependability.

This Court agrees that the issue of whether Kamahele's actions were for financial gain is not relevant to the sustained charges.  In the first instance, the issue of financial gain is a subfactor within Douglas factor 1, regarding the nature and seriousness of the offense.  See Douglas, 5 M.S.P.R. at 305 ("The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was . . . committed maliciously or for gain) (emphasis added).  TSA Director Clark clearly considered the nature and seriousness of the offense in determining removal was appropriate.  Moreover, the

17

specific offenses charged in this case in no way implicate financial gain or loss.  As this subfactor is irrelevant to the question of Kamahele's inappropriate conduct and lack of candor, this Court finds the MSPB did not err in refusing to consider it.

On the other hand, the Court finds the MSPB erred in rejecting Douglas factor 5, the effect of the offense of the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties.  The MSPB appears to have conflated several factors when assessing this issue, essentially arguing that Kamahele's length of service and lack of prior discipline implicate his dependability.  However, prior disciplinary record, dependability, and supervisor confidence are all separately-articulated Douglas factors.  Had the Federal Circuit believed them to be the same, it would have included them in one factor, rather than three.  The plain language of Douglas evinces that supervisor confidence should be treated as a separate factor, not an issue of the totality of the circumstances, as the MSPB treated it.

The MSPB's failure to consider Douglas factor 5 is in error.  Had the board considered the record with respect to supervisor confidence, it would have found that TSA Director Clark never asked Director Hayakawa about whether the allegations had an effect on his confidence in Kamahele's ability to perform his duties.  As noted by AJ Berg, TSA Director Clark's position as Western Area

18

Director placed him in a fairly attenuated relationship with Kamahele.  There is no

evidence TSA Director Clark had any contact with Kamahele prior to the

Management Inquiry or otherwise had knowledge about Kamahele's performance

or behavior.  As such, his perspective on Kamahele's ability to continue to perform

his duties appears to be derived solely from the Management Inquiry, for which

there is a record of flawed investigation.  His confidence in Kamahele's skills is,

therefore, somewhat tainted by the numerous allegations which were later denied

and the procedurally flawed investigation.

Moreover, Director Hayakawa testified at the hearing that he did, in

fact, continue to have confidence in Kamahele at the time of the conduct at issue,

as well as at the time of the hearing.  As Kamahele's direct supervisor, Director

Hayakawa would certainly have a much better perspective on Kamahele's ability to

continue to work effectively in a managerial position.  His continued confidence is

a powerful mitigating factor, and one that should have been considered.

Because the MSPB failed to properly consider supervisor confidence

and improperly conflated several factors in its absence, the MSPB's decision to

reinstate Kamahele's termination is not entitled to deference.  See Douglas, 5

M.S.P.R. at 306 (requiring conscientious consideration of all the relevant factors).

As such, the Court determines the most prudent course of action is to remand the

issue to the MSPB.  The MSPB is instructed to evaluate Director Hayakawa's

continued confidence in Kamahele's abilities.  Once this factor is properly

considered, the MSPB may make a new determination as to the appropriateness of

removal.

CONCLUSION

For the reasons stated above, the Court VACATES and REMANDS

the decision of the MSPB.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 13, 2009.



_____
David Alan Ezra
United States District Judge

Kenneth K. Kamahele v. Janet Napolitano, Civ. No. 08-00283 DAE-LEK; ORDER VACATING
THE DECISION OF THE MERIT SYSTEM PROTECTION BOARD AND REMANDING
THE MATTER FOR FURTHER CONSIDERATION